Estate of James J. Doty, Deceased, Forest J. Doty, Executor v. Commissioner.
Estate of James J. Doty v. Commissioner
Docket No. 14488.
United States Tax Court
1948 Tax Ct. Memo LEXIS 59; 7 T.C.M. (CCH) 789; T.C.M. (RIA) 48228; October 25, 1948
*59 Denver A. Busby, Esq., 120 So. La Salle St., Chicago, Ill., and Robert J. Bannister, Esq., for the petitioner. Frank M. Kavanaugh, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The respondent determined a deficiency in the income tax of James J. Doty for 1943 in the amount of $16,939.34. In an answer to the amended petition herein this Court was asked to approve an increase in the deficiency and declare the deficiency to be $20,070.49. The petitioner claims an overpayment of $1,107.76. The questions presented to the Court are: 1. Did the taxpayer realize a capital gain at the time of the liquidation of Economy Hog and Cattle Powder Company in 1943? 2. Did the taxpayer realize income from the forgiveness of indebtedness in the taxable year 1942? 3. Is petitioner entitled to claim a deduction in the amount of James J. Doty's taxable income for 1942 because of an expenditure of $18,500 made by the said James J. Doty to release certain property from a Creditors' Committee in 1942? Findings of Fact James J. Doty in his lifetime resided in Shenandoah, Iowa, and filed his income tax return for the year 1943 at Des Moines, *60 Iowa. The Economy Hog and Cattle Powder Company was an Iowa corporation organized in 1907, having on March 1, 1913, outstanding capital stock of 400 shares of which James J. Doty owned 300 shares. From the date of its organization to March 1, 1913, this corporation had paid annual dividends at the average rate of $20,000 per year and had accumulated on March 1, 1913, a surplus of $164,164.63. From March 1, 1913, to October 2, 1915, it had paid annual average dividends at the rate of $28,644 per year and on October 2, 1915, had a surplus of $150,765.85. On October 2, 1915, it converted $110,000 of this surplus into a capital stock dividend of 1,100 shares, of which James J. Doty received 825 shares, making his total holdings on October 2, 1915, 1,125 shares. On March 1, 1913, and until the stock dividend of October 2, 1915, the stock of this corporation had a fair market value of at least $500 per share. From October 2, 1915, up to November 8, 1922, James J. Doty acquired stock at prices as follows: Number
Date Acquired
of Shares
Cost
October 12, 1918
10
$ 1,600.00
November 26, 1918
5
1,000.00
October 23, 1920
124
12,400.00
October 23, 1920
7
980.00
Total
146
$15,980.00
*61 On November 8, 1922, petitioner, who was then a stockholder and president of James J. Doty Publishing Company, had become indebted personally and was also obligated as surety on debts of said James J. Doty Publishing Company. As an inducement to obtain time for the payment of all of his indebtedness, both personal and as surety, Doty, as "party of the first part," and the James J. Doty Publishing Company, as "the company," entered into an agreement with a Committee of Creditors, together with all other creditors who desired to join in the agreement providing that all of the assets of the Publishing Company should be placed in the hands of a Creditors' Committee for the orderly discharge of its obligations. Doty himself also transferred to said committee out of his personal assets several parcels of real estate and 1,136 shares of the common capital stock of the Economy Hog and Cattle Powder Company. A portion of said agreement reads as follows: "WHEREAS, the Company is indebted for borrowed money, for merchandise and otherwise, as shown by the books of the Company, upon part of which James J. Doty, Party of the First Part, is liable, and James J. Doty is also otherwise individually *62 indebted, a large part of which indebtedness is past due and the remainder will mature in the future, and * * *
"The Party of the First Part, * * * has, of his individual estate conveyed or will convey to the Des Moines Savings Bank & Trust Company of Des Moines, Iowa, IN TRUST, for the use and benefit of the Committee * * * the following described lots and lands, * * *. "Also eleven hundred and forty-four (1144) shares of the capital stock of the Economy Cattle & Hog Powder Company, * * * *. Said real and personal property of the individual estate * * * and its income shall be managed, sold and conveyed as the Committee may from time to time in its sole and exclusive judgment * * * direct, * * *. "If any surplus shall remain in the individual property of the Party of the First Part herein elsewhere particularly described, or of its proceeds, after the full satisfaction of the objects and purposes of this agreement, it shall be conveyed or returned by the Committee or under its direction, to the Party of the First Part. The actual number of shares of stock held by the committee from James *63 J. Doty was 1,136. Said agreement of November 8, 1922, was modified and extended first to July 1, 1932, by an agreement dated September 1, 1927, then from July 1, 1932, for a period of five years and then for a second period of five years from July 1, 1937. By said modification of September 1, 1927, the original indebtedness of Doty and the corporation was scaled down by cancellation from approximately $280,000 to $140,000 and it was provided by said modification that the committee should not sell the property and collateral of James J. Doty without first obtaining the written consent of the said James J. Doty. On July 1, 1942, the unpaid balance still owing the creditors was $45,207.83 and the Creditors' Committee still retained title to some vacant lots, the equity to which belonged to James J. Doty, together with the original 1,136 shares of Economy stock. In or about November 1941, petitioner made an offer to said committee to settle all indebtedness by the payment of $17,500 which was agreed to by the committee. In January 1942, however, before the agreement was carried out, other creditors who had not participated with the Creditors' Committee obtained a temporary injunction *64 to prevent James J. Doty and the James J. Doty Publishing Company Creditors' Committee from disposing of Doty's shares in the Economy Hog and Cattle Powder Company stock. Thereupon Doty conferred with one Sam Castillo, a stockholder and officer of the Economy Hog and Cattle Powder Company, who had been employed by Doty as stenographer in 1914, and procured Castillo's agreement to act as a simulated purchaser of the remaining assets held by the Creditors' Committee. Doty introduced Castillo to the chairman of said Creditors' Committee and informed him that Castillo would be the man nominated to purchase Doty's stock. On February 14, 1942, the restraining order obtained by the outside creditors was dissolved as to the Creditors' Committee but preserved for 45 days as to Doty to enable the outside creditors, if they so desired, to purchase Doty's Economy Hog and Cattle Powder Company stock at $17,500. In June of 1942, said stock not having been purchased by the objecting creditors, Doty turned over to Castillo $18,500, of which $1,000 was to pay Castillo for his services and $17,500 was to be used to procure the assets remaining in the hands of the Creditors' Committee. On July 1, 1942, Castillo *65 delivered a draft for $17,500 to the attorney for the Creditors' Committee and said attorney delivered to him certificates for the 1,136 shares of Economy Hog and Cattle Powder Company stock and a deed for the vacant lots in Shenandoah formerly belonging to James J. Doty. The $17,500 was not allocated either by the committee or by Castillo as to the part to be applied to any of the assets involved. With this payment James J. Doty and the James J. Doty Publishing Company were released from all further obligation to the creditors represented by the Creditors' Committee. The stock certificates received by Castillo were surrendered by him to the corporation and new certificates for 1,136 shares issued to him. These certificates were subsequently assigned by Castillo and delivered to Doty. Castillo also made and delivered a quit claim deed to the vacant lots to James J. Doty. After the assignment of Doty to the Creditors' Committee Doty purchased additional stock in the Economy Hog and Cattle Powder Company as follows: Number
Date Acquired
of Shares
Amount
November 18, 1922
1
$ 200.00
March 1, 1924
4
800.00
February 5, 1930
68
6,800.00
April 1, 1942
6
300.00
*66 During the year 1943 the Economy Hog and Cattle Powder Company was in the process of liquidation which was completed on December 31, 1943. During liquidation, payments were made in the amount of $86.524 per share. Doty received on the 1,136 shares, which had been in the name of Castillo, $98,291.16. His total receipts for the 1,225 shares which he either owned or controlled was $105,991.79. The "Explanation of Adjustments" in Commissioner's Notice of Deficiency is the following: "Capital gain from distributions received in liquidation of the corporation, Economy Hog and Cattle Powder Company, Shenandoah, Iowa, is determined as follows: "Cost:
Shares
10-12-18
10
$ 1,600.00
11- 8-22
1
200.00
3- 1-24
4
800.00
2- 5-30
58
5,800.00
2- 5-30
10
1,000.00
4- 1-42
6
300.00
7- 1-42
1,136
15,200.00
1,225
24,900.00
"Capital gain
$68,567.21
"Taxable at 50 per cent
34,283.60
"Reported per return - loss
(1,000.00)
"Adjustment
$35,283.60"
"Total distributions received
$93,467.21
Opinion The Commissioner contends that as a result of Doty's assignment of his stock in Economy Hog and Cattle Powder Company to the Creditors' *67 Committee and the subsequent sale of said stock by the Committee to Castillo, Doty lost whatever prior cost basis he may have had in said stock and acquired a new cost therein of $15,200; that the record fails to show what Doty's original cost basis was; and, in the alternative, that on July 1, 1942, Doty procured a cancellation of indebtedness in the net amount of $27,707.83, which constituted taxable income to him in that year. The petitioner contends that the transfer of the stock to the Committee was made in trust, limited to the special purpose of affording security to the Creditors' Committee and of ultimately liquidating the indebtedness; that the purchase by Castillo was under the direction of, and by means of funds supplied by, Doty; that Doty at all times was the real owner of the stock; that Doty's cost basis was the market value of the stock held on March 1, 1913, and the purchase price of that acquired thereafter; and that Doty expended on July 1, 1942, $18,500 to procure the release of property pledged to the debts of James J. Doty Publishing Company by reason whereof Doty was entitled to a deduction from his taxable income in 1942 of $18,500. It is to be noted that *68 on July 1, 1942, under the amended pledge agreement which had extended the agreement for five years from July 1, 1937, the Creditors' Committee was not authorized to sell Doty's pledged property without his consent. The testimony is undisputed that Doty, while the pledged property was in the possession of the Creditors' Committee, made an offer to said committee to settle all of his indebtedness for $17,500 and finally close up the trust arrangement which had been in existence for twenty years. The carrying out of this arrangement which, under the original agreement, would have involved the return of the pledged property to Doty after the indebtedness was cancelled, was temporarily halted by an injunction procured by other creditors until on February 14, 1942, the court which granted the injunction released the Creditors' Committee wholly from the same and continued the injunction for a maximum period of 45 days in order to permit the creditors to purchase the remaining assets in the hands of the committee for $17,500 if they so desired. At some undisclosed date prior to July 1, 1942, Doty informed the chairman of the committee that he was ready to carry out the agreement made prior *69 to the injunction but desired the stock to be turned over to one Sam Castillo whom he introduced to the chairman of the committee at the time the arrangements were made. On July 1, 1942, Doty having previously delivered the $17,500 to Castillo plus $1,000 additional to pay Castillo for his services, the latter called upon the attorney for the Committee, delivered the money which Doty had given him, and received the stock certificates, together with a deed for the vacant lots. Within a short time thereafter Castillo assigned the stock certificates in blank and delivered the same to Doty. He also delivered a deed for the vacant lots, both without any further consideration. We are unable to agree with the respondent that the facts set forth above constituted a sale of the stock involved by the committee to Castillo, or a subsequent purchase of the same from Castillo by the petitioner. The whole transaction winding up the trusteeship was initiated by Doty's offer to the committee to settle all of his past indebtedness by the payment of $17,500. If this had been done, the committee, under their contract of pledge, would have been required to redeliver the stock of the Economy Hog and *70 Cattle Powder Company to Doty. When, on July 1st, after receiving the $17,500 which Doty had agreed to pay, the committee subsequently, under instructions from Doty, delivered the stock to Doty's agent, Castillo, there was in truth and in fact no sale but merely a compliance with the terms of the pledge agreement which required them to return the stock, after the satisfaction of the indebtedness, to the pledgor. The Commissioner urges that if this transaction is not considered by the Court as a sale, such a ruling would countenance a fraud by Doty on his creditors in violation of section 713 (1946, Volume 2) Code of lowa. The difficulty with this argument is that we do not know whether those that claimed to be creditors of Doty in the litigation could have established their position as creditors as a matter of proof; and we do not know whether or not they were really defrauded of any money inasmuch as they could well have been paid in full by Doty from his liquidating dividends. Furthermore, in view of the opportunity afforded the outside creditors in their suit for injunction to purchase the stock involved for $17,500 from the Creditors' Committee, it is difficult to discern wherein *71 these creditors, even assuming their claims to be valid, have suffered any loss. Respondent urges, furthermore, if the above conclusion should be reached by the Court, that the petitioner has not introduced sufficient evidence to show his cost base for those stocks owned prior to March 1, 1913. Section 113 (a) (14), I.R.C., provides as follows: "Property Acquired before March 1, 1913. In the case of property acquired before March 1, 1913, if the basis otherwise determined under this subsection, adjusted (for the period prior to March 1, 1913) as provided in subsection (b), is less than the fair market value of the property as of March 1, 1913, then the basis for determining gain shall be such fair market value. In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date." In arriving at our value of $500 for each share of Doty's stock on March 1, 1913, we have given due regard to the fair market value of the assets of the corporation to the extent that they are shown, i.e., to the surplus of $164,000, and in addition we have considered *72 the dividend-paying history of the corporation for six years prior to March 1, 1913. However, since Doty received only $86.524 per share for his stock in liquidation, he could not have realized a capital gain with a cost base more than this amount and at no time prior to the date of the pledge did any of this stock purchased by Doty have a cost base of less than $100 a share. The Commissioner's final contention, in the event this Court finds no capital gain was realized by Doty in 1943, is that Doty received taxable income in 1942 because of the cancellation of indebtedness to the extent of $27,707.83 when he paid $17,500 in satisfaction of an indebtedness of $45,207.83. This contention is not tenable for the reason that the Commissioner, in his notice of deficiency, made no finding of income due to the cancellation of indebtedness and therefore the Commissioner has the burden of proof. He has not carried this burden because he has not shown what portion of the debts cancelled were personally due from Doty. It could well be that all of the cancelled indebtedness was due from the Doty Publishing Company, on which Doty was merely surety and, if so, Doty received no cancellation of *73 his personal indebtedness in 1942. This brings us to petitioner's contention that he is entitled to a bad debt deduction of $18,500 in 1942 because that amount was expended by him to secure a release of assets pledged to the debts of the Doty Publishing Company. On this point the burden is on the petitioner to establish that the $18,500 was expended on assets pledged to the debts of the publishing company and not as payment on the personal indebtedness of Doty himself. It could well be that all the debts existing on July 1, 1942, were personal to Doty. On this the petitioner has failed to carry his burden of proof. Decision will be entered for the respondent on the claim of overpayment by the petitioner and in favor of the petitioner on all other issues. Footnotes
*. Obviously referring to "Economy Hog and Cattle Powder Company."↩